## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| SHELLY CHESSER, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | ) |
| | )   No. **10-CV-1072** |
| ZIA PARK L.L.C. d/b/a/ ZIA PARK & | ) |
| BLACK GOLD CASINO and PENN | ) |
| NATIONAL GAMING, INC. | ) |
| | ) |
|     Defendants. | ) |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, SHELLY CHESSER ("Chesser") complaining against Defendants, ZIA PARK L.L.C. doing business as ZIA PARK & BLACK GOLD CASINO ("Black Gold") and PENN NATIONAL GAMING, INC. ("Penn") for sexual harassment and retaliation discrimination as set forth below:

### I. PARTIES

1.     Plaintiff, Shelly Chesser, is a United States citizen who, at all times relevant to this litigation, was employed by Black Gold in Hobbs, New Mexico as a Slot Machine Attendant. She may be served through her undersigned counsel.

2.     Defendant Penn is a Pennsylvania corporation operating multiple racetracks and casinos across the nation, including Black Gold. Penn is responsible for all policies, procedures, and practices relating to Black Gold employment. Defendant Penn may be served at C T Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101. Penn employees Christine Taylor, Pam Rieathbaum Teer, and Ahmad Mughni were employees of Penn and/or were agents and/or borrowed servants of Penn. Accordingly, Plaintiff affirmatively invokes the doctrine of *respondeat superior*. Moreover, the sexual assaults, discrimination, and retaliation described

*infra* all resulted from Penn's failures to promulgate and enforce policies and procedures designed to proscribe and eliminate the sexual assaults, discrimination, and retaliation described *infra*.

3.      Defendant, Zia Park L.L.C., is a Delaware limited liability company doing business as "Zia Park & Black Gold Casino."  Black Gold is a subsidiary of Penn.  Black Gold was Plaintiff's employer at all relevant times to this suit and was responsible for all policies, procedures, and practices relating to Black Gold employment.  Defendant may be served at C T Corporation System, 123 E. Marcy, Santa Fe, New Mexico 85701.  Black Gold employees Christine Taylor, Pam Rieathbaum Teer, and Ahmad Mughni were employees of Black Gold and/or were agents and/or borrowed servants of Black Gold.  Accordingly, Plaintiff affirmatively invokes the doctrine of *respondeat superior*.  Moreover, the sexual assaults, discrimination, and retaliation described *infra* all resulted from Black Gold's failures to promulgate and enforce policies and procedures designed to proscribe and eliminate the sexual assaults, discrimination, and retaliation described *infra*.

## II. BASIS OF CLAIM AND JURISDICTION

4.      This complaint is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e-5, and §§ 28-1-10(J) and 28-1-13(A) NMSA 1978.  Jurisdiction is based on 28 U.S.C. §§1331, 1332 and 1343(a).  The parties are completely diverse as Penn is incorporated in Pennsylvania, Black Gold Casino is incorporated in Delaware, and Plaintiff is a resident of New Mexico.  Plaintiff's claims exceed $75,000.  Plaintiff's complaint also poses a federal question. Venue is proper under 28 U.S.C. §1391(b)(2).

5.      Plaintiff filed a formal complaint of discrimination with the State of New Mexico's Human Rights Bureau on January 6, 2010.  The formal complaint was accepted for processing and on September 8, 2010 Plaintiffs allegations were substantiated in a

Determination of Probable Cause.  The Determination of Probable Cause letter (EEOC# 39B-2010-00355 and HRD# 10-01-06-0012) is attached hereto.

6.     After receiving the determination of probable cause in her case, Plaintiff requested a waiver of her formal hearing, and it was granted on September 2010.  The waiver letter is attached.  Therefore, pursuant to 28-1-10(J) and 28-1-13 NMSA, Plaintiff brings this suit.

### III. FACTUAL ALLEGATIONS

7.     Plaintiff was employed by Black Gold at its location at 3901 W. Millen Drive, Hobbs, New Mexico from June 16, 2008, until her termination on August 7, 2009.  During her employment, Plaintiff worked as a Slot Machine Attendant on the casino floor.  During the times relevant to the lawsuit, Plaintiff's immediate supervisor was Christine Taylor, the Assistant Slot Supervisor.

8.     As a Slot Machine Attendant, Plaintiff was responsible for paying out jackpots to customers on the casino floor, making minor repairs to slot machines, and general customer assistance.

9.      On October 31, 2008, several Black Gold employees attended a Halloween party hosted by another Black Gold employee.  Both Plaintiff and Taylor were in attendance.  During the party, Taylor acted inappropriately towards several women in attendance, attempting to grab and expose the women's breasts.  While Plaintiff sat at a kitchen table at the party, Taylor approached and assaulted her person by grabbing, fondling, and ultimately exposing Plaintiff's breasts without her consent.  As Plaintiff was seated and Taylor was standing, she was able to easily reach down and overpower Plaintiff in front of numerous witnesses.  Taylor succeeded in actually exposing Plaintiff's breasts.  Plaintiff was horrified, shocked, humiliated, and outraged at this behavior, repeatedly directing Taylor to cease her advances by screaming "don't do that" and "stop."   When

3

Taylor exposed Plaintiff, Plaintiff was extremely embarrassed, as there were men present in the room, and shouted for the men to turn away to giver her privacy to adjust her shirt back into place. Taylor appeared to be amused by the situation and simply walked away laughing.  Several party attendees witnessed the event.  Plaintiff did not report this incident to Black Gold immediately, fearing retaliation.  Plaintiff feared retaliation because Taylor made it clear that she was "in good" with the Slot Director, Ahmad Mughni.  On several occasions, Taylor stated that she had Mughni "wrapped around her finger," implying that she would not be reprimanded for her behavior and had favor with the Slot Director.  Additionally, one of the party attendees was Taylor's supervisor, Pam Rieathbaum Teer (Slot Supervisor).  Rieathbaum Teer told Plaintiff that she believed that if Plaintiff reported the incident, Plaintiff would lose her job.  Plaintiff nevertheless reported the assault to supervisor Rieathbaum Teer and asked for protection from and assistance regarding Taylor.

10.     After the incident many employees heard what had happened and  made  comments to Taylor stating how inappropriate her behavior was.  Plaintiff was embarrassed at the fact that everyone knew what had happened to her.  Taylor continued her harassing behavior by making inappropriate comments towards Plaintiff, such as telling her to "put them on the table."  Taylor was suggesting to Plaintiff to expose herself and place her breasts on the table, just as Taylor had done to her at the Halloween party.

11.     Taylor assaulted Plaintiff for a second time in February of 2009. This assault occurred on Black Gold premises during working hours while both Plaintiff and Taylor were acting in the course and scope of their employment.  Plaintiff, Taylor, and another Black Gold employee were working on the casino floor.  Taylor made the comment that she could do as she pleased because she was their supervisor.  Taylor repeatedly made the comment "this is my floor."  In order

to prove her statement, Taylor reached over and forced herself onto Plaintiff's person, grabbing and fondling her breasts.  The action happened very quickly and Plaintiff tensed up and tried jumping back to avoid the contact, but was unable to prevent the assault.  Other employees witnessed the incident and word soon spread again of Taylor's inappropriate conduct.  Several witnesses reported Taylor being "all up in Shelly's (Plaintiff's) boobs (breasts)."   This second incident left Plaintiff shocked and humiliated.  Plaintiff reported the sexual assault Taylor's supervisor, Pam Rieathbaum Teer.

12.     Notwithstanding that Plaintiff reported Taylor's sexual assaults to Penn and Black Gold supervisors, and much to Plaintiff's dismay, Taylor was promoted to Slot Supervisor when the position was vacated by Pam Rieathbaum Teer.  Shortly after her promotion in June, Taylor assaulted Plaintiff for a third time.  While on duty on the casino floor, Taylor, Plaintiff, and at least two other Black Gold employees were discussing Taylor's promotion.  The employees voiced their concern to Taylor that she must always act appropriately now that she had even more authority over the employees and refrain from her "inappropriate" behavior.  Taylor then reached over to Plaintiff and again grabbed and fondled her breasts.  Plaintiff immediately told Taylor to stop, voiced her concern at how uncomfortable it made her feel, and tried to remove herself from Taylor's reach. The witnesses present all voiced concerns at how "disgusting" and "inappropriate" her actions were, especially in light of her new position.  By this point, Plaintiff was extremely embarrassed and distressed because she felt that Taylor only targeted her in her sexual harassment.

13.     During the time period during which the sexual assaults occurred, Defendants never counseled or reprimanded Taylor for her behavior.  Indeed, as explained *supra*, Taylor's sexual assaults were perpetrated with absolute impunity and she was *promoted within the organization*.

14.     On June 4, 2009, several Black Gold employees gathered for a private farewell party

5

for Pam Rieathbaum Teer, as she had resigned.  Plaintiff was in attendance.  Taylor had not been invited to the gathering.  Nonetheless, Taylor appeared at the party at approximately 3:00 A.M., intoxicated.  At this event, Taylor admitted that her behavior towards Plaintiff at work was an attempt to single out Plaintiff in order to have her terminated or quit because she was jealous of Plaintiff.  Taylor admitted that she envied the attention that Plaintiff received from others and that it was the source of her disdain and treatment of Plaintiff in the workplace. Several Black Gold employees heard Taylor make this admission.

15.     Plaintiff repeatedly expressed her distress and embarrassment at this treatment to Taylor and reported the incidents in July 2009 to Ahmad Mughni, Manager and Slot Director at Black Gold.  Additionally, Plaintiff had reported the incidents to another supervisor, Pam Rieathbaum Teer, Slot Machine Supervisor, but this supervisor failed to notify human resources until her own resignation in June 2009.  In fact, Rieathbaum Teer witnessed at least one of the assaults.  Other employees reported these incidents to Black Gold management and human resources personnel.

16.     On August 7, 2009, Plaintiff was terminated from her employment and banned from the premises for a period of six months.  After her six-month bar had expired, Plaintiff returned as a patron to Black Gold with her family.  On one occasion, Plaintiff was told by security that she was again banned from the premises.  Plaintiff was later told by Human Resources supervisors at Black Gold that she was banned because she chose to file an EEOC complaint.

17.     Plaintiff contacted an EEO counselor through undersigned counsel to discuss her situation after her termination, resulting in the formal complaint of January 6, 2010, and this lawsuit.

## IV. STATEMENT OF LEGAL CLAIM

### A. TITLE VII DISCRIMINATION

18.    Plaintiff is entitled to relief in this action under Title VII of the Civil Rights Amendment, 42 U.S.C. §2000e-2(a), because she was sexually harassed by her supervisor, Taylor, numerous times while Taylor was acting within the course and scope of Taylor's employment as Plaintiff's supervisor, subjecting Plaintiff to a hostile work environment.

19.    Title VII of the Civil Rights Act of 1964 provides that it shall be an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex.  42 U.S.C. §2003-2(a)(1).   A supervisor's sexual harassment due to the sex of the employee is sex discrimination under Title VII of the Civil Rights Amendment.  *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986).  An employer may be vicariously liable for actionable discrimination caused by a supervisor, such as Taylor.  *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  A hostile environment exists when the offensive conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor*, 477 U.S. at 65.  Additionally, the work environment must be both subjectively and objectively hostile.  *Id.*

20.    Plaintiff has suffered unwelcome sexual harassment that was sufficiently severe and pervasive to alter the conditions of her employment and created an abusive and hostile working environment.  Taylor's actions were unwelcome because Plaintiff consistently told Taylor how inappropriate and uncomfortable she made her feel and always attempted to prevent Taylor from reaching for her breasts.  Taylor's abuse was pervasive and severe because she fondled Plaintiff's breasts numerous times, exposed Plaintiff's breats, made sexual comments to Plaintiff, and left

Plaintiff in fear of Taylor's next approach.  Plaintiff was humiliated, ashamed, and feared losing her job.  Furthermore, Taylor admitted that her treatment of Plaintiff was done to effect punishment and hostility towards Plaintiff out of jealousy.  Taylor's behavior towards Plaintiff was not only hostile in Plaintiff's opinion, but was also considered to create a hostile work environment by other Black Gold employees.

## B. 28-1-7 NMSA DISCRIMINATION

21.     Plaintiff is entitled to relief in this action under the New Mexico Human Rights Amendment, §28-1-7 of NMSA 1978, for the reasons stated above.  Section 28-1-7(A) states that it is an unlawful discriminatory practice for an employer to "refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified" because of sex.  The New Mexico Supreme Court has stated that New Mexico state courts may look to federal civil rights adjudication for guidance in interpreting the NMHRA.  Using the same analysis as Plaintiff's Title VII claim, Plaintiff has been subjected to sexual harassment, creating a hostile work environment.

22.   Additionally, Plaintiff is entitled to relief under §28-1-7(I) because she was retaliated against for informing Black Gold employee Ahmad Mughni of Taylor's abuse.  This section states that is an unlawful discriminatory practice for any person or employer to "engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the Human Rights Act."

23.     To establish a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity, (2) was subjected to adverse employment action subsequent to, or contemporaneous with the protected activity, and (3) a causal connection exists between the

protected activity and the adverse employment action. *Juneau v. Intel Corp.*, 127 P.3d 548, 552 (NM 2005).

24.     Plaintiff engaged in a protected activity by opposing Taylor's unlawful discriminatory treatment of her by informing Slot Director Mughni of the sexual assaults. Plaintiff suffered an adverse employment action when she was terminated from Black Gold. Finally, a causal connection exists between Plaintiff's reporting of the sexual assaults and Plaintiff's termination because Taylor herself acknowledged that she was hoping to be rid of Plaintiff and that she had sway over Mughni. Additionally, Plaintiff was told by Slot Supervisor Pam Rieathbaum Teer that if Plaintiff did report the abuse, she would probably lose her job. Finally, Plaintiff's termination came soon after her report of the discrimination to Mughni.

## V. DAMAGES

25.     Plaintiff has suffered damages in excess of the minimum jurisdictional limits of this court. Plaintiff is also entitled to punitive damages for her claims under 42 U.S.C. § 2000e. Defendants have engaged in intentional discrimination and have done so with malice or with reckless indifference to Plaintiff's federally protected rights. *Kolstad v. ADA,* 527 U.S. 526 (1999).

## VI. PRAYER

26.     WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to answer and appear herein and that upon final hearing, she receive judgment against Defendants in the following respects:

    a.     Compensatory Damages for all lost wages and benefits (back pay)
    b.     Compensatory Damages for all wages and benefits to be lost in the future (front pay);
    c.     Compensatory Damages for mental anguish and emotional distress both past and future;

9

d.      Pre-judgment interest;

e.      Post-judgment interest;

f.      Cost of Court;

g.      Punitive Damages;

h.      Attorney's fees; and

j.      All other relief to which she may prove herself to be justly entitled.

## VII. JURY DEMAND

Plaintiff demands trial by jury on all contested issues of fact.

Respectfully submitted,

**/S/ Electronically Filed**
**LEON SCHYDLOWER**
Attorney at Law
210 N. Campbell
El Paso, TX 79901
Tel No.: (915)532-3601
Fax No.: (915)532-0904
State Bar No. 12506
Attorney for Plaintiff

10