**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SHELLY CHESSER,

      Plaintiff,

v.                                            Civ. No. 10-1072 JCH/LAM

ZIA PARK LLC d/b/a ZIA PARK &
BLACK GOLD CASINO and PENN
NATIONAL GAMING, INC.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on *Penn National Gaming, Inc.'s Motion to Dismiss* (Doc. 3), filed December 14, 2010. After reviewing the parties' briefs, the record, and the applicable law, the Court concludes that the Defendant's motion should be granted in its entirety, for failure to exhaust administrative remedies because of plaintiff's failure to name defendant Penn National Gaming, Inc, in the complaint filed with the Equal Employment Opportunity Commission.

**FACTS**

From June 16, 2008 to August 7, 2009, *pro-se* Plaintiff Shelly Chesser was employed as a slot-machine attendant for Defendant Zia Park & Black Gold Casino ("Black Gold") in Hobbs, New Mexico. *See* Complaint (Doc. 1) ("Compl.") ¶ 1, at 1; *id.* ¶ 7, at 3. Penn National Gaming, Inc. ("PNGI") nationally "operates multiple racetracks and casinos," including Black Gold, which is its subsidiary. Compl. ¶¶ 2-3, at 1-2. Chesser's immediate supervisor was Christine Taylor, the assistant slot supervisor. *See id.* ¶ 7, at 3.

On October 31, 2008, Chesser attended a private Halloween party that was hosted by a Black Gold employee and attended by other Black Gold employees, including Taylor. *See id.* ¶ 9, at 3.

1

During this party, in front of witnesses, Taylor grabbed, fondled, and exposed Chesser's breasts. *See id.* ¶ 9, at 3. Chesser was "horrified, shocked, humiliated, and outraged" by this unwanted behavior and told Taylor to stop. *See id.* Taylor walked away laughing. *See id.* at 4. Because Chesser feared retaliation, she did not immediately report this event to Black Gold. *See id.* The Halloween party was also attended by Pam Rieathbaum Teer, Taylor's supervisor. *See id.* Teer told Chesser it was her belief that, if Chesser reported Taylor's acts, she would lose her job. *See id.* Chesser nevertheless reported the acts, asking for protection against Taylor and for Teer to assist her with regard to Taylor. *See id.*

Taylor continued to make inappropriate comments to Chesser. For example, she told Chesser to "put them on the table." *See id.* ¶ 10, at 4. Taylor also continued to otherwise harass Chesser. *See id.*

In February 2009, Chesser, Taylor, and another employee were working at Black Gold when Taylor commented that she could act as she pleased because she was the supervisor. *See id.* ¶ 11, at 4. In view of other employees, Taylor then "reached over and forced herself onto [Chesser], grabbing and fondling her breasts." *Id.* at 5. Chesser reported the event to Teer, who was still Taylor's supervisor. *See id.* at 5. But Teer did not advise Black Gold's human resources department of Chesser's complaints until Teer resigned in June 2009. *See id.* ¶ 15, at 6. When Teer resigned, Taylor was promoted to Teer's role as slot supervisor. *See id.* ¶ 12, at 5. Soon after her promotion, while engaged in a conversation with Chesser and other employees regarding how Taylor would need to modify her behavior and act more appropriately because of the increased authority she obtained by the promotion, Taylor again, in front of witnesses, grabbed and fondled Chesser's breasts. *See id.* ¶ 12, at 5. Chesser "immediately told Taylor to stop" and told Taylor that such acts made her uncomfortable. *Id.* ¶ 12, at 5.

2

On June 4, 2009, Chesser attended a private farewell party for Teer. *See id.* ¶ 14, at 5-6. Although she had not been invited to the party, at around 3:00 a.m., Taylor showed up, intoxicated, and talked with the attendees about her poor treatment of Chesser. *See id.* at 6.

In July 2009, Chesser reported Taylor's acts against her to Ahmad Mughni, Black Gold's manager and slot director. *See id.* ¶ 15, at 6. Chesser was terminated from her employment with Black Gold on August 7, 2009 and was banned from Black Gold's premises for six months. *See id.* ¶ 16, at 6. When she tried to return to the casino more than six months later as a customer with her family, Chesser was advised that she had again been banned because she had filed an Equal Employment Opportunity Commission ("EEOC") complaint. *See id.* ¶ 16, at 6.

On January 6, 2011, Chesser filed a formal discrimination complaint with the New Mexico Department of Workforce Solutions, Human Rights Bureau, and the EEOC against Black Gold. *See* Compl. ¶ 5, at 2; Doc. 10, attached Charge of Discrimination. The Bureau made its determination of probable cause on September 8, 2010. *See id.* ¶ 5, at 2 & Ex. A. Chesser requested and was granted a waiver of her right to a formal hearing. *See* Compl., Ex. B (Doc. 1-2).

Chesser brings her claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and the "New Mexico Human Rights A[ct], § 28-1-7 of NMSA 1978." *See* Compl. ¶ 4, at 2; *id.* ¶ 21, at 8. She bases the Court's jurisdiction over this matter on "28 U.S.C. §§ 1331, 1332 and 1343(a)." *Id.* Chesser contends "she was sexually harassed by her supervisor, Taylor, numerous times while Taylor was acting within the course and scope of Taylor's employment . . . subjecting Plaintiff to a hostile work environment." *See id.* ¶ 18, at 7.

## LEGAL STANDARDS

"[A] motion under Rule 12(b)(1) 'may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.'" *Davis ex re. Davis v. United*

3

*States*, 343 F.3d 1282, 1295 (10th Cir. 2002) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).  When a party makes a facial challenge to the sufficiency of plaintiff's allegations concerning subject-matter jurisdiction, the Court must accept the allegations as true.  *See E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1303 (10th Cir. 2001).  But when a party challenges the facts upon which subject matter jurisdiction depends, "the [C]ourt does not 'presume the truthfulness of the complaint's factual allegations,' but 'has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).'"  *Id.* (quoting *Holt*, 46 F.3d at 1002-03).  A Rule 12(b)(1) motion, unlike a Rule 12(b)(6) motion, is considered a "speaking motion" and can include references to evidence extraneous to the complaint without converting it to a Rule 56 motion.  *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir. 1987).

A Rule 12(b)(1) motion must be converted to a Rule 56 motion only  "when resolution of the jurisdictional question is intertwined with the merits of the case."  *Holt*, 46 F.3d at 1003;  when the court's subject-matter jurisdiction is conditioned upon the same statute that provides the substantive claim in the case.  *See Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 978 (10th Cir. 2002).

**DISCUSSION**

PNGI argues that the claims against it must be dismissed on two grounds: (i) under FED. R. CIV. P. 12(b)(6) because Chesser has not stated sufficient facts to show a relationship between PNGI and Black Gold to subject PNGI to liability under a theory of *respondeat superior,* and (ii) under FED. R. CIV. P. 12(b)(1) because the Court "lacks subject matter jurisdiction over PNGI because Plaintiff never asserted an administrative claim against it."  Doc. 3 at 1-5.  The Court will first consider the second argument, whether it has subject-matter jurisdiction over PNGI.

4

In this case the Court's subject-matter jurisdiction is not dependent upon the same statute that provides the substantive claim, so that the jurisdictional question is not intertwined with the merits of this case. Accordingly, the Court may look outside the Complaint in making its decision without converting the motion to dismiss to a motion for summary judgment.

Lawsuits under Title VII require, as a jurisdictional prerequisite, that the alleged victim exhaust his or her administrative remedies. *See Duncan v. Manager, Dep't of Safety, City & County. of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). Section 706(f)(1) of Title VII, 42 U.S.C. s 2000e-5(f)(1), allows a plaintiff to bring a civil action only against the respondent that he or she named in the EEOC charge and only after administrative remedies have been exhausted. *See Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980). Because EEOC complaints are written by layman, not attorneys, they are liberally construed. *See id.* As a result, there are narrow exceptions to the rule requiring that each defendant be specifically named as a respondent in the EEOC charge; for example, where the defendant is mentioned in the text of the charge or "where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation." *Id.*

There are four factors that are pertinent to the determination of whether the omission of a defendant's name requires automatic dismissal in the Court action under Title VII:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 1312 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)). Additional relevant factors may also be evaluated. *Id.* The Court concludes after analysis of the four factors, that Chesser's action against PNGI should be dismissed.

As to the first factor, the Court concludes PNGI's role was ascertainable at the time of the filing of the EEOC complaint through Chesser's reasonable efforts. In *Romero*, supra, the plaintiff needed discovery to determine the exact individuals involved in the matter. Here, in contrast, PNGI's name was evident in its company emblem attached to items to which Chesser points in her Complaint, such as the employment manual. PNGI's information was not hidden from Chesser; she only needed to make a reasonable effort to ascertain that information and include it in her EEOC complaint. In fact, Chesser states in her Response that "an ocean of materials" exists that connect the ownership and control of Black Gold to PNGI. *See* Doc. 10 at 4-5. If such connection is so obvious, and if Chesser believed that PNGI was her true employer, PNGI should have been included in her EEOC claim.[1]

As to the second factor, the Court concludes that the interests of the two entities have not

---

[1] In effect, Chesser is incorporating her substantive argument that PNGI and Black Gold constitute one employer. That an entity is a wholly-owned subsidiary of another does not by itself impose liability upon the owning entity. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1364 (10th Cir. 1993). Businesses are legally permitted to incorporate and isolate their liabilities among separate entities. *See id.* at 1362. "The doctrine of limited liability creates a strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances." *Id.* "In order to hold a parent company liable as an employer under Title VII, the parent must exercise a degree of control that exceeds that normally exercised by a parent corporation." *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1071 n. 2 (10th Cir. 1998). In making its decision whether two related entities constitute a single employer, the court considers four factors: "(1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1322 (10th Cir. 2004). The third factor is considered to be the most important. *See Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1220 (10th Cir. 2002). This analysis, however, is not the same as the one used to determine whether Chesser's failure to name PNGI in her EEOC claim bars her claim against it.

been described in the Complaint or other materials as being so similar that "for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings." The Complaint, in fact, includes very little information regarding PNGI. There is certainly no comparison of how these entities are similar or an explanation of why PNGI's inclusion was unnecessary in the EEOC proceedings.[2] Even Chesser's Response does not demonstrate that the entities are the same. For example, Chesser points to an attachment containing a hotline number as an indication of PNGI's control, but the same attachment states that illegal or unethical activity should be reported to "the appropriate supervisor in your company." *See* Doc. 10, attachments.[3] Chesser also points to the Employee Guidance Manual that has PNGI's logo on the cover and the CEO "Welcome Message," which states that the manual describes both the core policies and the local property's polices. She further notes that section 703 of the employment manual indicates that harassment should be reported to "your supervisor" or "your Human Resources Department." *See id.*

As for the third factor, Chesser does not discuss whether PNGI's absence from the EEOC proceeding may result in actual prejudice to PNGI's interest. PNGI asserts that, while it was aware of the EEOC charges against Black Gold, it had no notice that a claim was also being asserted

---

[2] With regard to PNGI, Chesser makes the conclusory statements that "Penn is responsible for all policies, procedures, and practices relating to Black Gold employment," Compl. ¶ 2, at 1;"Penn employees Christine Taylor, Pam Rieathbaum Teer, and Ahmad Mughni were employees of Penn and/or were agents or borrowed servants of Penn," *id.*; and "the sexual assaults, discrimination, and retaliation described . . . all resulted from Penn's failures to promulgate and enforce policies and procedures designed to proscribe and eliminate the sexual assaults, discrimination, and retaliation described infra," *id.* at 1-2. These same conclusory allegations are made regarding Black Gold. *See id.* ¶ 3, at 2.

[3] The portions of the letter attached to the Response indicated that Chesser did not utilize this number to report harassment until almost two weeks *after* she was terminated. *See* Doc. 10, attachments.

against it. *See* Doc. 12 at 4. PNGI argues that it was prejudiced because it "had no opportunity or reason to participate in the EEOC process on its own behalf because Plaintiff did not provide notice that it was an intended respondent." *Id.* In her Response, Chesser states

> the attached materials bear out that both P[NG]I and Zia Park LLC own and/or control the activities at Black Gold. P[NGI] cannot now contend that it was prejudicial in not being formally named in the EEOC complaint because it knew of the charges against Black Gold and had legal counsel in Pennsylvania, where P[NGI]'s headquarters are located, respond to the complaint.

Doc. 10 at 5. But Chesser did not attach Black Gold's EEOC response to her Complaint or to her Response to the motion to dismiss, nor did she provide any other material evidencing PNGI's actual involvement in the EEOC process. Nothing shows that both Defendants responded to the EEOC complaint. The unlabeled portions of counsel's letter attached to the Response does not indicate the firm's client, much less a signature or address of counsel. Chesser additionally states that "Defendants' response to Plaintiff's EEOC complaint cited to P[NG]I's employee manual and policies . . . giving the impression that the companies were so closely related that the employment policies were integrated." *Id.* But, as mentioned *supra*, the manual indicates that both core policies *and* local policies control. By not providing PNGI with an opportunity to be heard in the EEOC proceeding, PNGI could not articulate its relationship with its subsidiary and any role it may play in its operations.

As for the fourth factor, Chesser does not provide any evidence that PNGI in some way represented that it had an employment relationship with her through Black Gold. Chesser states in her Response that "an offer of settlement was made to Black Gold's legal counsel for both Defendants." *Id.* But the fact that *Chesser* directed an offer of settlement to both Defendants through Black Gold's counsel does not show that PNGI indicated that its relationship with her arose through Black Gold. It shows only that sending one offer of settlement is the route Chesser chose

to pursue.

PNGI contends that there are "insufficient allegations within the four corners of the Complaint to support Plaintiff's failure to name PNGI in her EEOC charge." Doc. 12 at 5. The Court agrees that Chesser's failure to exhaust her remedies against PNGI is fatal to her EEOC claim against it.

Similar to the exhaustion requirement for Chesser's federal claim, New Mexico law requires exhaustion of remedies against a respondent for claims brought under the New Mexico Human Rights Act. *See Sonntag v. Shaw*, 130 N.M. 238, 243, 22 P.3d 1188, 1193 (2001). Chesser did not address New Mexico's law regarding exhaustion of remedies. Her failure to exhaust her remedies against PNGI for her claim brought under the New Mexico Human Rights Act prior to filing her claim in court, like her EEOC claim, causes the claim to fail for want of subject-matter jurisdiction.

Because the Court does not have subject-matter jurisdiction over Chesser's claims against PNGI, no analysis of whether PNGI is liable under a theory of *respondeat superior* is necessary. The motion to dismiss will be granted and PNGI will be dismissed as a Defendant from this case.

**IT IS THEREFORE ORDERED** that *Penn National Gaming, Inc.'s Motion to Dismiss* [Doc. 3] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**